UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANASTAZIA SCHMID, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-00200-WTL-TAB |
| | ) | |
| STEVE MCCAULEY, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORUPUS**

Petitioner Anastazia Schmid was found guilty but mentally ill of murder and related charges in an Indiana state court. Ms. Schmid now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After reviewing the record and the parties' briefs, the Court concludes that Ms. Schmid received ineffective assistance of counsel at trial in violation of her Sixth Amendment rights. Ms. Schmid's counsel failed to request a competency hearing before trial despite his inability to communicate effectively with her about her case due to her mental state.

In denying Ms. Schmid's ineffective-assistance-of-counsel claim, the Indiana Court of Appeals unreasonably determined the facts and unreasonably applied clearly established Federal law as determined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Drope v. Missouri*, 420 U.S. 162, 171 (1975). When these standards are correctly applied, they reveal that Ms. Schmid's counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A federal habeas court "will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Burt v.*

1

*Titlow*, 571 U.S. 12, 20 (2013) (citation omitted). But this case presents a rare instance where this has occurred. Accordingly, Ms. Schmid's petition for a writ of habeas corpus is **GRANTED**. A writ of habeas corpus shall issue ordering Ms. Schmid's release from custody unless the State elects to retry Ms. Schmid within 120 days of the entry of Final Judgment.

# I.
# Background

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> Schmid has an extensive history of psychological problems that began when she was a young girl. By 2001, when she was twenty-eight years of age, she had been married and divorced and was living with her boyfriend, Tony Heathcote (Heathcote), the victim. Schmid's prior marriage had produced a daughter, and, on March 2, 2001, Schmid was informed that Heathcote allegedly had molested her daughter. Upon receiving this news, Schmid became very upset. Two days later, on March 4, 2001, Schmid and Heathcote were having sexual relations at their home using restraints, a dog collar, a leash, and a blindfold when Heathcote suggested that Schmid play the part of the little girl and Heathcote would play the part of the daddy. This statement caused Schmid to think of her daughter. At that time, Schmid obtained a knife and began stabbing Heathcote who was blindfolded and restrained at the ankles. Heathcote was stabbed thirty-nine (39) times and died. Later, Schmid indicated that at the time of the stabbing she had heard a voice telling her that she was the messiah and that Heathcote was evil and needed to be eliminated. Following a jury trial, Schmid was convicted with verdicts of guilty but mentally ill.

*Schmid v. State*, 804 N.E.2d 174, 177 (Ind. Ct. App. 2004).

Ms. Schmid was arrested on March 6, 2001, and charged with murder and related counts. Dkt. 66-3, p. 45. Three judges presided over the proceedings, beginning with Judge George J.

Heid. Trial Tr. 1.[1] The court appointed public defenders Phillip Smith and Amy Hutchinson to represent Ms. Schmid. *Id.*, p. 39-40. They filed a motion for a competency hearing and Ms. Schmid was evaluated by Dr. Richard Rahdart and Dr. Mukesh Desai. *Id.* p. 40. On June 25, 2001, the trial judge determined that she was not competent, so she was transferred to Evansville State Hospital for treatment. *Id.* pp. 52-53; 62. On October 16, 2001, she returned to the county jail. *Id.*, p. 62.

On January 16, 2002, Ms. Hutchinson filed a second motion to determine competency because Ms. Schmid was experiencing hallucinations and "going backwards again." *Id.* p. 51; Trial Tr. 17. The court reappointed Dr. Rahdert and Dr. Desai, who evaluated Ms. Schmid on January 22 and 23, 2002. *Id.* at 18. Although both found her competent, the court did not make a competency determination. On February 6, 2002, the trial judge changed. Judge David J. Crouse took over as the pro tem judge for Judge Heid. *Id.* at 27.

Eight months elapsed between Dr. Rahdert and Dr. Desai's evaluations and the start of Ms. Schmid's trial. During this time, she was transported several times to Wabash Valley Hospital to be evaluated and have her medications adjusted by a psychiatrist based on fluctuations in her mood and behavior. Dkt. 42-4, PCR Confidential Exhibit Vol. 1, pp. 17-24, 51-54, 72-78, 83-84; PCR App. 56-57. Prior to and during her trial, the county jail administered the following psychiatric medications daily to Ms. Schmid: Neurontin, Topamax, Depakote, Klonopin, Thorazine, Effexor, Zyprexa, and Risperdal. *Id.*, pp. 51-54.

Shortly before the trial commenced, the pro tem judge, Judge Crouse, was relieved from his temporary duties by Judge Thomas H. Busch, who became the third judge to preside over the case. Trial Tr. 54. On August 12, 2002, Ms. Schmid's family retained private counsel, David

---

[1] The Court uses the following citation format throughout this Order: "Trial Tr." – Trial Transcripts; "PCR App." – Post-Conviction Appeal Appendix; "PCR Tr." – Post-Conviction Hearing Transcript; "Ex." – Equitable Tolling Hearing Exhibit.

Hennessy, who became lead counsel on the case. Dkt. 66-3, p. 54; PCR Tr. 432.

On August 15, 2002, Ms. Hutchinson filed a motion to withdraw. Dkt. 66-3, p. 75. On August 19, 2002, Mr. Hennessy filed a motion for continuance. Dkt. 66-3, pp. 69-70. The court denied both motions. Trial Tr. 77-78.

Prior to the start of trial, the judge realized that a final determination of Ms. Schmid's competency to stand trial had never been made. Dkt. 66-3, p. 91; dkt. 66-4, pp. 2-5. On August 23, 2002, despite 1) his lack of personal knowledge of the proceedings before he took the bench three weeks prior; 2) the eight months that had passed since Ms. Schmid's last evaluation, during which her medications had been adjusted on several occasions; and 3) without any further evaluations or a hearing to determine Ms. Schmid's present mental state, the court entered a *nunc pro tunc* competency determination backdated to February 8, 2002. Dkt. 66-4, p. 5. On September 19, 2002, the court granted Mr. Smith's motion to withdraw as counsel. Dkt. 66-3, p.77. Ms. Hutchinson continued to assist Mr. Hennessy.

Trial by jury began on September 30, 2002. Mr. Hennessy presented evidence of Ms. Schmid's mental illness, including the testimony of three psychiatrists. Dr. Desai testified to her psychiatric history, stating "she had a history of hallucinations from about age five . . . [and] a history of several psychiatric hospitalizations." Trial Tr. 613. His diagnosis was:

> she suffered from dissociative disorder not otherwise specified [and] ... bipolar disorder with psychotic features. The evidence for this is the history of auditory hallucinations, hearing voices, the visual hallucinations, seeing angels and devils, delusional belief that [Heathcote] was the devil.

*Id*. at 621. Dr. Desai opined that at the time of Mr. Heathcote's death, Ms. Schmid "was not able to appreciate the nature and quality of her act." *Id*. at 622. Similarly, Dr. Rahdert and Dr. Coon each diagnosed Ms. Schmid with schizoaffective disorder and both found that she was legally insane at the time of the killing. *Id*. at 688-91, 741-42. On the other hand, Dr. Crane, the

4

prosecution's witness, testified that he believed Ms. Schmid was able to appreciate the wrongfulness of her acts at the time of the murder. *Id*. at 782.

During the trial, Schmid's attorneys had increasing concerns as to her competence. In a sidebar on October 2, 2002, Mr. Hennessy stated:

> The Court's aware from previous competency and restoration of competency pretty much the mental condition of Ms. Schmid. Yesterday she was having some problems and the voices were starting and it's typical of the schizophrenic aspect of the mental disease that they start as whispers and build and to a crescendo and that's where they were. Through the day we'd get a break and that helped her and then last night [Ms. Hutchinson] went to see her and [Ms. Hutchinson] has some real concerns after that meeting.

*Id*. at 223-24.

Ms. Hutchinson added that Ms. Schmid had been experiencing severe shaking, was hearing voices, and that her eyes would "just fixate on one spot." *Id*. at 225. The judge responded, "I don't want to question [Ms. Schmid] because that's probably not appropriate." He then asked Ms. Hutchinson if Ms. Schmid knew "enough to let you know when she's having a problem or does someone have to observe her and let us know?" *Id*. Ms. Hutchinson stated she thought Ms. Schmid could let her know when she was having a problem and that they would let the Court know if they questioned her competence. *Id*. at 226.

Without further inquiry, the Court resumed the trial. The following day, the prosecutor requested a ruling from the court that Ms. Schmid was competent. *Id*. at 328. Judge Busch asked counsel if there was any objection and stated that from his observations, Ms. Schmid appeared aware of the proceedings and had been communicating with counsel. In response, Mr. Hennessy stated, "[w]e would stipulate to that ... she's been communicating with counsel." *Id*. Ms. Hutchinson stated, "[s]he gets—she can talk to me about the trial last night as well, it's just the auditory voices and her eyes, I had some concerns." *Id*. at 329. The Court found her no reason

5

to find Ms. Schmid incompetent. *Id*.

The jury returned its verdict on October 5, 2002, finding Ms. Schmid guilty, but mentally ill, of murder and other related charges. Dkt. 66-1, pp. 32-33. The court sentenced Ms. Schmid to 55 years' incarceration, with five years suspended. Dkt. 66-3, pp. 56-58. Ms. Schmid's conviction was upheld on direct appeal. *Schmid*, 804 N.E.2d 174. After her petition to transfer was denied by the Indiana Supreme Court, Ms. Schmid sought state post-conviction relief. On appeal from the denial of post-conviction relief, she argued that: 1) her attorneys were ineffective for failing to raise the defense of use of justifiable reasonable force; 2) "she was incompetent to stand trial, and the attorneys were ineffective for failing to bring to the court's attention her deteriorated mental condition"; 3) her attorneys were ineffective for failing to communicate a plea offer; and 4) her trial attorneys were ineffective for failing to explore the possibility that she testify. Dkt. 61-9. The Indiana Court of Appeals affirmed the denial of postconviction relief on August 13, 2012. Dkt. 6-11. On transfer to the Indiana Supreme Court, Ms. Schmid reasserted her claims, and the Indiana Supreme Court denied transfer on November 8, 2012.

Ms. Schmid filed the instant petition for a writ of habeas corpus on February 11, 2014. This Court denied her petition as untimely on June 24, 2014. The Seventh Circuit Court of Appeals vacated the judgment and remanded the case with instructions to consider holding an evidentiary hearing on the issue of equitable tolling. Dkt. 49. A hearing was held on February 15, 2019. Dkt. 101. The Court found that Ms. Schmid was entitled to equitable tolling, dkt. 108, and now turns to the merits of her claims.

## II.
## Applicable Law

### A. Federal Review of State-Court Convictions

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains

7

its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### B. Ineffective Assistance of Counsel

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland*, 466 U.S. at 687. For a petitioner to establish that "counsel's assistance was so defective as to require reversal," she must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of

the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673-74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As applied to cases involving counsel's failure to request a competency hearing, the petitioner must "establish a reasonable probability that [she] would have been found incompetent . . . if [her] attorneys had requested a competency hearing." *Burt v. Uchtman*, 422 F.3d 557, 569 (7th Cir. 2005).

**C. Competency**

The Fourteenth Amendment due process guarantees do not permit the trial of an individual who "lacks mental competency." *Indiana v. Edwards*, 544 U.S. 164 (2008). Competency to stand trial requires the ability to understand the proceedings and to assist counsel in preparing a defense. *United States v. Berry*, 565 F.3d 385, 398 (7th Cir. 2009); *see also Drope*, 420 U.S. at 171; *Dusky v. United States*, 362 U.S. 402 (1960). It is well settled that "where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial," the trial court, either on its own motion or at the request of counsel, must conduct a competency hearing. *Pate v. Robinson*, 383 U.S. 375 (1966); *accord Drope*, 420 U.S. 162; *Burt*, 422 F.3d at 567.

### III.
### Discussion

Ms. Schmid claims that the Indiana Court of Appeals unreasonably determined that Ms. Schmid's counsel was not ineffective for 1) failing to demand a competency hearing, and 2)

9

failing to request a justifiable reasonable force defense. Dkt. 66. The respondent maintains that Ms. Schmid is not entitled to habeas relief on either claim. The Court concludes that Ms. Schmid is entitled to relief based on her counsel's failure to request a competency hearing, and thus will not reach the question of whether her counsel provided ineffective assistance when he failed to request a justifiable reasonable force defense.

The last reasoned opinion at issue here is the Indiana Court of Appeals' decision affirming the denial of Ms. Schmid's petition for post-conviction relief. *See Wilson*, 138 S. Ct. at 1191-92. The Indiana Court of Appeals disposed of Ms. Schmid's claim that her trial counsel was ineffective for failing to request a competency hearing at the time of trial as follows:

> We review claims of ineffective assistance of counsel under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, a claimant must show counsel's performance fell below an objective level of reasonableness based on prevailing professional norms, *Taylor v. State*, 882 N.E.2d 777, 781 (Ind. Ct. App. 2008), and that deficient performance resulted in prejudice. *Id*.
>
> "Prejudice occurs when the defendant demonstrates that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). We need not consider whether counsel's performance fell below the objective standard if that performance would have not changed the outcome. *Strickland*, 466 U.S. at 687.
>
> [***]
>
> 2. Competency Hearing
> It is a violation of due process to convict a defendant who is incompetent to stand trial. *Gibbs v. State*, 952 N.E.2d 214, 219 (Ind. Ct. App. 2011), *trans. denied*. A defendant is not competent to stand trial when she is unable to understand the proceedings and assist in the preparation of her defense. *Id*. Schmid was initially found incompetent, but was then found competent to stand trial. She argues her trial counsel should have asked for another competency hearing. We disagree.
>
> The post-conviction court found:

Conclusions of Law on Issue (A)(4):[2]
A. I.C. 35-36-3-2 does not require a hearing for a finding by the court after a defendant attains the ability to understand the proceedings and assist in the preparation of the defendant's defenses.
B. Based on [the] testimony of [Schmid's trial counsel], Schmid was able to assist and communicate with her attorneys.
C. Further, it seems this issue was or could have been raised on appeal.

\* \* \*

Conclusions of Law on Issue (A)(6):
A. Based on the opinions of Dr. Rahdert and Dr. DeSaii, Schmid was competent to stand trial.
B. Schmid failed to prove how a hearing on her incompetence would have resulted in a different outcome.

(App. at 96-97.)

After the court found Schmid incompetent, she was committed to a mental health facility "for a few months." (Tr. at 439.) On January 17, 2002, after Schmid was released from the mental health facility, her trial counsel asked for an evaluation to determine competency. The court appointed two doctors to determine Schmid's competency, and both determined she was competent to stand trial. At the PCR hearing, one of Schmid's trial counsel, Amy Hutchinson, testified she was able to communicate with Schmid during trial and Schmid was able to understand the proceedings. Hutchinson testified she and other trial counsel were able to communicate effectively with Schmid when they visited Schmid at the jail.

In support of her contention she was incompetent to stand trial, Schmid presented evidence to the post-conviction court that she was highly medicated during trial, and often appeared "on edge" or "nervous," (*Id*. at 441), during the court proceedings. Schmid's argument on appeal is a reiteration of her argument before the post-conviction court, and we are not permitted to reweigh the evidence or judge the credibility of the witnesses before the lower court. *See Fisher*, 810 N.E.2d at 679 (the post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses). Accordingly, we will not disturb the post-conviction court's decision.

*Schmid v. State*, 972 N.E.2d 949, 951; 953 (Ind. Ct. App. 2012).

---

[2] In Ms. Schmid's state post-conviction proceedings, Issue (A)(4) was that "[c]ounsel failed to force a hearing to determine the Defendant's competency after the Defendant had been found incompetent to stand trial and hospitalized for mental illness." Similarly, Issue (A)(6) was that "[c]ounsel failed to recognize that Defendant was incompetent to stand trial and failed to procure a continuance or competency exam on those grounds." Dkt. 66-1, pp. 47-48.

11

The Indiana Court of Appeals correctly set forth the *Strickland* standard, but did not separately address both prongs of *Strickland* when analyzing Ms. Schmid's claim. Instead, it set forth the post-conviction court's reasoning and declined to disturb that court's decision. The Indiana Court of Appeals' decision on this issue can be read as holding both that it was not deficient performance to fail to ask for a competency hearing and that Ms. Schmid failed to show that she was prejudiced by the lack of a competency hearing.

In *Burt v. Uchtman*, 422 F.3d 557, 566 (7th Cir. 2005), the Seventh Circuit reviewed a similar decision in which the Illinois Supreme Court did not address deficient performance but held that the petitioner did not establish prejudice because he failed to demonstrate a bona fide doubt that he was competent at trial. Like Ms. Schmid, Mr. Burt was prescribed numerous psychiatric drugs in the months before he pleaded guilty to two counts of murder. *Id*. at 565-66. Eight months before his guilty plea, he was evaluated and found to be competent. *Id.* at 561. His prescriptions changed in the time between his evaluation and his guilty plea and his counsel had concerns about his lack of alertness, mood swings, belligerence, and rationality. *Id*. at 565-68.

The Seventh Circuit concluded that Mr. Burt's counsel performed deficiently when they failed to request a renewed competency hearing before his trial and eventual guilty plea, as *Drope* and *Pate* require contemporaneous competency exams when there is a bona fide doubt as to a defendant's competence to stand trial. *Id*. at 568. Furthermore, the Seventh Circuit held that the Illinois Supreme Court unreasonably applied *Strickland* when it "ignored a wealth of evidence that established a reasonable probability Burt would have been found incompetent had a hearing been held." *Id*. at 570.

The Indiana Court of Appeals similarly failed to consider evidence of Ms. Schmid's incompetence before trial. To conclude that Ms. Schmid was competent at the time of trial, the

12

Indiana Court of Appeals relied on two facts. First, the Indiana Court of Appeals stated that "[b]ased on [the] testimony of [Ms. Schmid's trial counsel], Ms. Schmid was able to assist and communicate with her attorneys." *Schmid*, 972 N.E.2d at 953. The Indiana Court of Appeals altered the quote from the trial court's decision on post-conviction which stated that "[b]ased on testimony of Amy Hutchinson and Phil Smith, Ms. Schmid was able to assist and communicate with her attorneys." PCR App. 96.

The original quote makes clear that the post-conviction court and, by adoption, the Indiana Court of Appeals relied only on the testimony of Ms. Hutchinson and Mr. Smith to conclude that Ms. Schmid was able to assist her attorneys. This is significant because Mr. Smith had withdrawn from representing Ms. Schmid before trial. He testified at the state post-conviction hearing that once Mr. Hennessy appeared in the case, "the public defender's office felt their participation was not necessary." PCR Tr. 416. Amy Hutchinson also testified that she took a supporting role to attorney David Hennessy who was Ms. Schmid's lead counsel at trial. PCR 432. CHECK

As Ms. Schmid's lead attorney at trial, Mr. Hennessy's assessment of Ms. Schmid's ability to participate in her defense should have been key to any determination by the state post-conviction court about whether there was a bona fide doubt Ms. Schmid was competent to stand trial.

At the state post-conviction evidentiary hearing Mr. Hennessy stated that if he had attempted to convey a preliminary plea offer to Ms. Schmid before trial, she would have given him a "blank stare." PCR Tr. 407-08. Therefore, he did not bother to discuss it with her. When asked whether he thought Ms. Schmid was able to assist in her defense, Mr. Hennessy testified: "I think she could understand what you're saying but she was heavily medicated and it—I don't know almost like being immobilized." PCR Tr. 366.

13

While Ms. Hutchinson testified that Ms. Schmid was able to assist in her defense after she initially regained competency, she also testified that "Anastasia was fairly psychotic at times. And would talk about voices and things like that and the biggest issue comes in to making sure that she is dealing in reality and not responding to voices." PCR Tr. 441, 443.

The second fact the Indiana Court of Appeals relied upon to find that Ms. Schmid was competent at the time of trial was that Dr. Rahdert and Dr. DeSai found Ms. Schmid competent to stand trial. But the Court of Appeals failed to confront the fact that their competency evaluation took place eight months before trial. Dkt. 66-3, p. 86. In *Burt*, the Seventh Circuit rejected a trial court's reliance on eight-month-old psychiatric evaluations as they "could not have addressed [petitioner's] current psychological condition because of the numerous changes made to his prescriptions in the eight months between the examination and the start of trial." *Id*.

Here, Ms. Schmid's medications were adjusted several times in the eight months between Dr. DeSai and Dr. Rahdert's evaluations and the commencement of her trial. Dkt. 42-4, PCR Confidential Exhibit Vol. 1, pp. 17-24, 51-54, 72-78, 83-84; PCR App. 56-57. Furthermore, Ms. Schmid's mental illness left her prone to psychotic episodes triggered by stressful or traumatic situations. Trial Tr. 622-23, 690. Consequently, a psychiatric evaluation conducted eight months prior would provide little insight into Ms. Schmid's mental fitness at the time of the trial.

The Indiana Court of Appeals unreasonably applied federal law when it held that neither prong of *Strickland* had been satisfied.[3] 28 U.S.C. § 2254(d)(1). In *Burt*, the Seventh Circuit held

---

[3] The Indiana Court of Appeals' also based its decision on an unreasonable finding of fact in light of the evidence presented in the State court proceeding when they ignored Mr. Hennessy's testimony regarding Ms. Schmid's mental state and the fact that her competency determination was made eight months before trial. 28 U.S.C. § 2254(d)(2). Factual determinations are not unreasonable under § 2254(d)(2) "merely because the federal habeas court would have reached a different conclusion in the first instance," nor are they unreasonable if "[r]easonable minds reviewing the record might disagree about the finding in question." *Wood v. Allen*, 558 U.S. 290,

14

that the Illinois state court unreasonably applied *Strickland* when it held that Mr. Burt's attorney's failure to request a competency hearing contemporaneous with his trial did not prejudice Mr. Burt. *Burt*, 422 F.3d at 570. Like in *Burt*, the Indiana Court of Appeals ignored key evidence of Ms. Schmid's potential incompetence when it analyzed the prejudice prong of *Strickland*. And by relying on Dr. DeSai and Dr. Rahdert's evaluations to determine both that Ms. Schmid's counsel did not perform deficiently and that she was not prejudiced by the lack of competency hearing at the time of her trial, the Indiana Court of Appeals unreasonably applied federal law as established in *Drope* and *Pate*. *See Burt*, 422 F.3d at 568.

In sum, the Indiana Court of Appeals' decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87. It is well settled that "where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial," the trial court, either on its own motion or at the request of counsel, must conduct a competency hearing. *Pate*, 383 U.S. 375; *accord Drope*, 420 U.S. 162. These Supreme Court cases leave no room for a trial attorney to strategically decide not to request a competency hearing when he has a bona fide doubt as to the defendant's competence, as Ms. Schmid's counsel did.

---

301 (2010) (citation and quotation marks omitted). But here, reasonable minds could not disagree that testimony from Ms. Schmid's trial counsel, Mr. Hennessy and Ms. Hutchinson, in addition to the fact that Ms. Schmid had previously been found incompetent and was taking numerous psychiatric medications, establishes a bona fide doubt as to her competency at the time of trial. *See Wood*, 558 U.S. at 301. Although at times they thought she understood what they were saying, at other times she responded to voices in her head, was psychotic, and unable to assist in her defense. It is an open question whether meeting the § 2254(d)(2) standard necessarily requires meeting the § 2254(e)(1) standard. *See Id.*; *Price v. Thurmer*, 637 F.3d 831, 837 (7th Cir. 2011). Although the Court analyzes the factual determination under § 2254(d)(2), the arguably more demanding standard of § 2254(e)(1) is also met because testimony from Ms. Schmid's lead trial attorney that she was incapable of discussing a potential plea offer is clear and convincing evidence that the state post-conviction court incorrectly determined that she was competent.

15

The testimony of Ms. Schmid's counsel that she was psychotic, heavily medicated, and would have stared blankly had Mr. Hennessy attempted to discuss a plea offer with her, raised a bona fide doubt as to her competence to stand trial, particularly when one takes into account that she had previously been declared incompetent during the same proceedings. Her counsel's failure to request a competency hearing, and instead to stipulate to her competency when the prosecution raised the issue during trial was deficient performance. And because the evidence raises a bona fide doubt as to her competence to stand trial, she has "establish[ed] a reasonable probability that [she] would have been found incompetent . . . if [her] attorneys had requested a competency hearing." *Burt*, 422 F.3d at 569.

### IV.
### Conclusion

For the reasons explained above, Ms. Schmid's petition for a writ of habeas corpus is **granted** because she failed to receive effective assistance of counsel during trial in violation of her Sixth Amendment rights. Since Ms. Schmid is entitled to relief on this claim, the Court need not reach her claim that trial counsel should have requested a justifiable reasonable force defense.

A writ of habeas corpus shall issue ordering Ms. Schmid's release from custody unless the State elects to retry her within 120 days of entry of Final Judgment in this action.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 5/15/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

16

Distribution:

Henry A. Flores, Jr.
INDIANA ATTORNEY GENERAL
henry.flores@atg.in.gov

Kelly A. Loy
OFFICE OF THE INDIANA ATTORNEY GENERAL
kelly.loy@atg.in.gov

Caryn Nieman Szyper
INDIANA ATTORNEY GENERAL
caryn.szyper@atg.in.gov

Joshua T. Wackerly
PILLSBURY WINTHROP SHAW PITTMAN, LLP
joshua.wackerly@pillsburylaw.com